UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK
4:19 pm, Dec 28, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

№ 16-CR-403 (JFB)(20)

UNITED STATES OF AMERICA,

VERSUS

JOSE SUAREZ.

Defendant.

**MEMORANDUM AND ORDER**
December 28, 2020

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

### I. FACTS

On May 23, 2019, Jose Suarez was convicted by a jury of racketeering, murder, assault and related charges in connection with the January 30, 2017 murder of Esteban Alvarado-Bonilla and shooting of an employee at a deli in Central Islip, and the December 18, 2016 assault of a man outside a restaurant in Brentwood. The conviction came after a mistrial in April 2019 and subsequent three-week trial in May 2019. In the course of each proceeding, video recordings depicting the charged attacks were offered by the government and shown to the jury, along with members of the public in attendance. As a result, two separate requests by the media were made, dated April 25, 2019 and May 9, 2019, by Univision 41 WXTV and Newsday, respectively, to obtain copies of these videos shown at trial. The Court issued an oral ruling during the trial granting the motion for media access to the videos. This Memorandum and Order supplements that oral ruling.

### II. DISCUSSION

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cnty.*, 763 F.3d 235, 238-39 (2d Cir. 2014). These rights are protected by both the common law and the First Amendment to the United States Constitution. *Id.* at 239; *United States v. Loera*, No. 09cr466, 2018 WL 5906846, at *2 (E.D.N.Y. Nov. 11, 2018).[1]

---

[1] Because this Court finds that the common law right of access requires the production of the requested video recordings, it does not reach the constitutional question of whether the First Amendment also requires production.

*A.     The Common Law Right of Access*

It is undisputed that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted). However, the right to inspect "is not absolute." *United States v. Graham*, 257 F.3d 143, 149 (2d Cir. 2001) (quoting *Nixon*, 435 U.S. at 598). Instead, courts must balance the "responsibility to ensure that criminal defendants are not deprived of their right to a fair trial," *id.*, with the common law recognition that "[w]hat transpires in the court room is public property," *In re Application of Nat'l Broad. Co. (Myers)*, 635 F.2d 945, 951 (2d Cir. 1980) (quotation marks omitted). This decision is committed to the "informed discretion" of the district court. *See Nixon*, 435 U.S. at 602-03; *Myers*, 635 F.2d at 950; *Loera*, 2018 WL 5906846, at *3. Accordingly, only when the court determines, in its discretion, that the documents requested are entitled to a presumption of access, and that such access would not deprive the defendant of a fair trial, may access be granted.

In *Myers*, the Second Circuit discussed the strong presumption in favor of allowing public access to judicial records entered into evidence at a "public session of court," 635 F.2d at 952 (videotape evidence), and the courts in this circuit have "consistently held that the public has an 'especially strong' right of access to evidence introduced in trials," *see United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (quoting *Myers*, 635 F.2d at 952); *In re Application of CBS, Inc.*, 828 F.2d 958, 960-61 (2d Cir. 1987) (videotaped deposition). The rationale for allowing access in these cases is simple: the evidence has already been disclosed to the public by presentation at the public session of trial, and "it would take the most extraordinary circumstances to justify restrictions" on the ability of those not in the courtroom to subsequently "see and hear" the evidence. *Myers*, 635 F.2d at 952. Additionally, in *Myers*, the Second Circuit noted that, when the evidence can be copied and inspected without "significant risk of impairing the integrity of the evidence or interfering" with the trial, "only the most compelling circumstances" should justify a restriction on the public's right of access to it. *Id.*; *see United States v. Basciano*, No. 03cr929, 2007 WL 1827330, at *1 (E.D.N.Y. June 25, 2007).

The Second Circuit has outlined a three-step process in evaluating whether the common law right to access applies to a particular request. First, the documents requested must be determined to be "judicial documents" to which a presumption of access attaches under common law; second, "the court must determine what weight to assign to the presumption of access"; and third, the presumption of access must be balanced with any countervailing factors. *Loera*, 2018 WL 5906846, at *3 (citing *Erie Cnty.*, 763 F.3d at 239).

A "judicial document" is not limited to "documents"; rather, it is defined as an item that is "relevant to the performance of the judicial function and useful in the judicial process." *Graham*, 257 F.3d at 152 (quotation marks omitted) (stating that the common law right applies to items in evidence and, generally, to "materials on which a court relied in determining the litigants' substantive rights" (quotation marks omitted)); *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) ("A document is . . . relevant to the performance of the judicial function if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which

2

way the court ultimately rules or whether the document ultimately in fact influences the court's decision." (quotation marks omitted)). Indeed, the Supreme Court in *Nixon* assumed, without deciding, that the common law right applied to tape recordings, as well as documents. 435 U.S. at 599 n.11.

The videos here are properly considered "judicial documents." The videos are documentary in nature and were presented as evidence during trial. *See Loera*, 2018 WL 5906846, at *3 (stating "[e]xhibits are usually introduced at trial because they are relevant and useful to that judicial process"). Moreover, the videos show the alleged crimes and constitute direct evidence of the operative facts of the crimes charged. Such evidence is central to the judicial process because the jury considered the videos when determining whether the defendant was proven guilty of the charged crimes. *See id.* Accordingly, this Court concludes that the requested videos are judicial documents entitled to the presumption of access.

### B.     Strength of the Presumption of Access

After determining that evidence qualifies as a "judicial document," a court must consider "the weight to be given the presumption." *Amodeo*, 71 F. 3d at 1048-49. The weight accorded to the presumption of access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049. The weight to be afforded the presumption moves along a "continuum": when the role in exercising Article III judicial power is larger, the stronger the weight, and where the role is negligible, the weaker the weight. *Id.* at 1049-50. Moreover, where such documents are available to the public already, as are filings with the court, the weight of the presumption is stronger than situations in which the filings are under seal. *Id.* at 1050.

The videos requested by the petitioners are entitled to the strongest presumption of access. First, the videos were already made available to the public as evidence entered at the trial of Jose Suarez. The videos were played for the jury and the members of the public in attendance at the trial. Thus, this publicly presented evidence is accorded a strong presumption of access. *Id.*

Second, the requested videos played a significant role "in determining [the defendant's] substantive rights" as they were used as evidence of the charged crimes, and the jury necessarily considered them in deciding whether the government had proved the defendant's guilt. *Id.* at 1049; *see Graham*, 257 F.3d at 149 ("[T]here [is] a strong presumption in favor of allowing the public to inspect and copy any item entered into evidence at a public session of a trial." (quotation marks omitted)); *Basciano*, 2007 WL 1827330, at *1 (stating that "because it was admitted in evidence in a public proceeding, the media is presumed to have access to it").

Given the public nature of the trial, the fact that the videos were already presented to the jury and the public at the trial, and the centrality of the videos to the operative facts of the crimes charged, the request is accorded a strong presumption in favor of access. *Graham*, 257 F.3d at 149, 154.

### C.     Countervailing Factors that Weigh Against the Presumption of Access

The presumption of access to judicial documents is not absolute. It must be balanced with the court's responsibility to protect the criminal defendant's right to a fair trial. *See Nixon*, 435 U.S. at 598. Such risks may include tainting of the potential juror

3

pool, prejudicing the defendant in a subsequent trial, or prejudicing the other defendants involved in separate trials. In the instant case, these risks do not rise to a level substantial enough to outweigh the presumption of access.

As noted above, the jury and members of the public in attendance at the trial have already seen the videos. The videos were admitted into evidence, and shown in open court; therefore, potential prejudice as to the jurors in this case is not a reasonable objection since the jurors have been selected and exposed to the evidence during trial. The jurors also were instructed not to watch or listen to any media reports of the trial. Even considering the risk of exposure to a *future* potential pool of jurors if a re-trial became necessary, "the opportunity for voir dire examination still remains a sufficient device to eliminate from jury service those so affected by exposure to pre-trial publicity." *Myers*, 635 F.2d at 953.

Similarly, the mere possibility that broadcast of the videos could hinder the rights of any of the other defendants implicated in the same alleged crimes is not "sufficient to overcome the presumption of access." *Graham*, 257 F.3d at 155. In *Myers*, the Second Circuit rejected this argument as too speculative. It stated: "We do not believe the public at large must be sanitized as if they all would become jurors in the remaining . . . trials." *Myers*, 635 F. 2d at 953-54. Again, assuming *arguendo* that (1) a subsequent trial is necessary for Jose Suarez and/or (2) there is a risk of tainting a future pool of potential jurors in the remaining defendants' cases, these videos "presumably will be replayed at any retrial" or other trial involving the same alleged crimes. *United States v. Mitchell*, 551 F.2d 1252, 1262 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon*, 435 U.S. 589. Thus, any potential prejudicial effect is negated by the likelihood of re-presentation of the videos in future trials and the availability of thorough *voir dire* during jury selection at any subsequent trials.

Accordingly, this Court concludes that the risks to the defendant's right to a fair trial (or the rights of co-defendants in future trials) do not outweigh the strong presumption in favor of access to the judicial documents.

### III. CONCLUSION

For the reasons set forth herein, and in the Court's ruling from the bench, the defendant's objection to the news media petitioners' request for access to the admitted video evidence is overruled and access is granted to the petitioners.

SO ORDERED.

/s/ Joseph f. Bianco

JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: December 28, 2020
Central Islip, New York

* * *

The government is represented by John Joseph Durham, United States Attorney's Office, Eastern District of New York, 610 Federal Plaza, Central Islip, NY 11722. Defendant is represented by John Frederick Carman, 666 Old Country Road, Garden City, NY 11530.