UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 16-CR-403 (JFB)(20)

UNITED STATES OF AMERICA,

versus

JOSE SUAREZ,

Defendant.

FILED
CLERK
4:30 pm, Dec 28, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM AND ORDER
December 28, 2020

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

On August 8, 2018, defendant Jose Suarez was charged in a superseding indictment with a number of crimes, including: racketeering and racketeering conspiracy (including predicate acts of conspiracy to murder and murder), in violation of 18 U.S.C. §§ 1962(c) and 1962(d); conspiracy to commit assault in aid of racketeering resulting in serious bodily injury, in violation of 18 U.S.C. § 1959(a)(6); assault in aid of racketeering resulting in serious bodily injury, in violation of 18 U.S.C. § 1959(a)(3); conspiracy to murder rival gang members, in violation of 18 U.S.C. § 1959(a)(5); murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); brandishing and discharge of a firearm during crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 924(c)(1)(C)(i); assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3); acting as an accessory after the fact, in violation of 18 U.S.C. § 3; and conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), (D).

On February 1, 2019, the government moved *in limine* to empanel an anonymous and partially sequestered jury. (Dkt. No. 818 ("Gov. Motion").) The Court granted the motion orally. This Memorandum and Order supplements the oral ruling.

I. MOTION FOR ANONYMOUS AND PARTIALLY SEQUESTERED JURY

The government has moved for the empanelment of an anonymous and partially sequestered jury. In particular, the

government requests: (1) that the names, addresses, and places of employment of the prospective jurors not be revealed to either the parties or their attorneys, and (2) that the jurors be directed to park in the employee parking lot and enter and exit the courthouse through the employee entrance for the duration of trial. (Gov. Motion at 2.)

For the reasons set forth herein and orally in Court, the Court grants the government's motion in its entirety. Specifically, the Court finds that maintaining jury anonymity and partially sequestering the jury as proposed by the government is warranted here in light of the defendant's associates' alleged history of witness tampering and related offenses, combined with the defendant's alleged association with a large-scale, violent gang—with members who have both the means and a demonstrated willingness to obstruct justice—and given the seriousness of the pending charges against the defendant in this case. Moreover, the Court concludes that it will be able to take reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected. Accordingly, the Court concludes that the use of an anonymous and partially sequestered jury is appropriate here and will not infringe upon the defendant's constitutional rights.[1]

A. Legal Standard

The Second Circuit has explained that empaneling an anonymous jury "may be warranted when the jury needs protection, as when the government has demonstrated a defendant's willingness to tamper with the judicial process, or when there has been extensive pretrial publicity in cases involving allegations of violent conduct." *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) (quotation marks, citations, and alterations omitted). "In such circumstances, the use of an anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a careful *voir dire* designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities." *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995). In reviewing a challenge to the use of an anonymous jury, a court must "balance the defendant's interest in conducting meaningful *voir dire* and in maintaining the presumption of innocence, against the jury member's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994). Accordingly, "[a]s a general rule, a district court may order the empaneling of an anonymous jury upon '(a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected.'" *United States v. Stewart*, 590 F.3d 93, 124 (2d Cir. 2009) (quoting *United States v.*

---

[1] Because this analysis is based upon the nature of the charges in this case along with allegations and convictions in other MS-13 cases before this Court, and because the defendant did not submit any opposition to the motion, the Court concludes in its discretion that an evidentiary hearing on the government's motion is not necessary. *See United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) ("The district court has discretion to determine whether or not an evidentiary hearing is needed on the

government's allegations.").

2

*Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991)).

As to the first factor, the mere invocation of words such as "organized crime" or "mob" is insufficient to warrant jury anonymity. *United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991). Instead, "something more" must be shown, such as "a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a juror to reasonably fear for his own safety." *Id.* Evidence that a defendant or his codefendants have engaged in obstruction of justice—which indicates a defendant's willingness to tamper with the judicial process—"has always been a crucial factor" in determining that a jury needs protection. *See id.* at 240; *accord United States v. Quinones*, 511 F.3d 289, 295 (2d Cir. 2007) ("We have identified strong reasons to believe that a jury needed protection in situations where the government demonstrated a defendant's willingness to tamper with the judicial process.").

Notably, to support a finding that an anonymous jury is warranted, obstruction of justice charges need not relate to prior jury tampering efforts, but instead may relate solely to efforts to tamper with witnesses or otherwise obstruct the judicial process. For example, in *Quinones*, defendants were charged with murdering a confidential informant in retaliation for his cooperation with law enforcement authorities. 511 F.3d at 295. Defendants in that case argued that their conduct "did not actually threaten the judicial process," but the Second Circuit disagreed, noting that the murder of the witness "threatened the judicial process both by eliminating a witness who could have provided incriminating evidence against defendants and by sending a powerfully frightening message to others of the terrible consequences awaiting anyone who cooperated in defendants' prosecution." *Id.* at 295-96. Accordingly, the Court held that the district court acted "well within its discretion in concluding that the defendants posed a substantial risk to the integrity of the judicial process warranting empanelment of an anonymous jury." *Id.* at 296; *see also Thai*, 29 F.3d at 801 (upholding decision to empanel anonymous jury where the government's motion was "based in large part on evidence of defendants' acts of intimidation toward their crime victims, their attempts to kill certain of those victims, and the murder of [a victim] because of his refusal to retreat from his complaints to the police" and where the government "maintained that jurors whose identities were disclosed would be at risk because [the gang] had at least 100 members, many of whom were not in custody"); *Aulicino*, 44 F.3d at 1116 (anonymous jury warranted where, *inter alia*, co-conspirators allegedly sought to bribe a witness in their federal case, attempted to influence a witness in a prior state prosecution, and were caught on tape indicating that defendant's father would interfere with the judicial process on defendant's behalf).

Furthermore, in addition to considering a defendant's and his associates' prior attempts to interfere with the judicial process, courts in the Second Circuit have considered other factors in determining whether there is strong reason to believe that the jury needs protection, including the seriousness of the crime, whether the defendant is charged with participating in a "large-scale criminal enterprise," the defendant's criminal history, the means of the defendant and his associates to interfere with jurors, and the likelihood of media attention in the trial. *United States v. Wilson*, 493 F. Supp. 2d 397, 398 (E.D.N.Y.

3

2006). For example, in *Amuso*, the indictment alleged that the defendant had committed crimes of "extreme violence" and that he was the "head of a powerful crime organization." 21 F.3d at 1264. In holding that the district court's decision to empanel an anonymous jury was adequately supported, the Second Circuit noted that the crimes charged showed not only that the defendant "was willing to interfere with the judicial process by murdering government witnesses" but also that, as the head of an organized crime family, the defendant certainly "had the means to interfere with the jurors if he so desired." *Id.* at 1264-65. Moreover, the Second Circuit noted that the district court did not improperly rely upon Amuso's affiliation with organized crime, but instead had appropriately considered the alleged organized crime affiliation "along with other evidence which provided a reasonable basis from which the trial court concluded that precautionary measures were required." *Id.* at 1265.

Similarly, in *Wilson*, the defendant was charged with the intentional murder of two police officers. 493 F. Supp. 2d at 399. In finding that the use of an anonymous jury was warranted, the court relied not only upon the seriousness of the offense, but also upon the fact that: (1) the defendant was part of a large-scale violent gang with a history of murder, robbery, and narcotics trafficking; (2) the gang had other members and associates who would remain at large during trial and, accordingly, the defendant was in a position to interfere with the jury through those associates; (3) the defendant and his associates had a history of interference with the judicial process, including ordering a fellow prisoner to attack a corrections officer and coercing witnesses not to testify or cooperate with authorities; and (4) there was extensive media attention in the case. *Id.* at 399-400.

As another example, in *Young*, the defendant, a purportedly low-level member of an organized crime family, was alleged to have engaged a "horrific pattern of violence," including the murder and dismemberment of an associate who had "boasted excessively." *United States v. Young*, 385 F. App'x 12, 14 (2d Cir. 2010) (quotation marks omitted). Although it was "unclear precisely what duty the family owed to [the defendant] and to what lengths the family might go in order to assist him," the Second Circuit upheld the district court's decision to empanel an anonymous jury, stating that not only had the government made "a sufficient showing of the [organized crime] organization's willingness to subvert the judicial process," but also that the evidence at trial indicated that the defendant "was willing to subvert the proceedings by inducing another to provide him with a false alibi," and there was significant media interest in the trial. *Id.* (quotation marks and citations omitted); *see also United States v. Blackshear*, 313 F. App'x 338, 342 (2d Cir. 2008) ("We have identified several factors which might be considered in deciding whether to empanel an anonymous jury. Among them are (1) the defendant's capacity to threaten jurors; (2) defendant's prior attempts to interfere with the judicial process; and (3) the likelihood of publicity."); *Quinones*, 511 F.3d at 296 ("Two other grounds cited by the government—the seriousness of the crime and the likelihood of pre-trial publicity—reinforce the district court's decision to empanel an anonymous jury."); *Thai*, 29 F.3d at 801 (empaneling of anonymous jury was appropriate where, *inter alia*, the gang "had at least 100 members, many of whom were not in custody").[2]

---

[2] Although it is unclear whether factors such as the seriousness of an offense or extensive

4

Significantly, while the seriousness of an offense is a relevant consideration, the offenses at issue need not involve violence for the court to conclude that an anonymous jury is warranted. *See United States v. Locasio*, 357 F. Supp. 2d 558, 561 (E.D.N.Y. 2005) ("The concern in this case is not that anonymity is necessary to assuage jurors' fears for their personal safety. Rather, the concern is that if jurors['] identities are revealed they can easily be contacted and offered bribes.").

Once the Court concludes that there is strong reason to believe the jury needs protection, the Court must then take reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected. *Paccione*, 949 F.2d at 1192. Such precautions include extensively questioning jurors during *voir dire* to explore prospective jurors' biases and providing the jurors with a neutral explanation for the anonymity that does not negatively implicate the defendants. *See, e.g., Quinones*, 511 F.3d at 296 ("The district court's *voir dire* was sufficiently detailed to compensate for jury anonymity, and the court couched its jury instruction regarding anonymity in such a way as to avoid intimating that defendants posed any risk to persons or to the judicial process." (citations omitted)); *United States v. Wong*, 40 F.3d 1347, 1377 (2d Cir. 1994) (finding that the district court took reasonable precautions where it "questioned prospective jurors about their familiarity with the case, the defendants and the crime scenes, and inquired about their neighborhoods, marital status, employment, spouse's and children's employment, education, organizational affiliations, ethnicity, military service, and other matters," which "was more than sufficient to enable the defendants to exercise their challenges meaningfully, and to obtain a fair and impartial jury" (quotation marks omitted)); *Paccione*, 949 F.2d at 1193 ("We see no inadequacy in the procedural precautions taken by the court to prevent prejudice to the defendants as a result of the anonymity of the jurors. Defendants do not contend that the *voir dire* was in any way inadequate. The court also adequately instructed the jury at the outset of the trial that the special precautions were designed to protect the jury from contacts by the media, thereby implying that the security measures were not the result of threats from the defendants.").

B. Application

The defendant is charged with a number of serious offenses stemming from his alleged involvement with La Mara Salvatrucha ("MS-13"), a street gang that the superseding indictment alleges is involved in a variety of violent, criminal acts, including murder, attempted murder, narcotics trafficking, extortion, witness tampering, and witness retaliation. (*See*

---

pretrial publicity, standing alone, would support the use of an anonymous jury, the cases cited *supra* and others in this Circuit demonstrate that such factors are relevant when considered in conjunction with each other or in conjunction with evidence of a defendant's willingness or ability to tamper with the judicial process. *See, e.g., Quinones*, 511 F.3d at 296 (seriousness of offense and extensive publicity supported the decision to empanel an anonymous jury where there was also evidence of defendants' willingness to subvert the judicial process); *United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991) (upholding district court decision to preserve jury anonymity given, *inter alia*, "the serious nature of the charges and the potential for long prison terms and high monetary penalties," and defendants' membership and strong ties to organized crime, as well as defendants' alleged involvement in the murder of a co-defendant and other acts of witness tampering).

5

Dkt. No. 575, Sixth Superseding Indictment ("S-6 Indictment") ¶¶ 1-2.) Suarez is charged specifically with conspiring to murder and murdering, in aid of racketeering, Esteban Alvarado-Bonilla. (S-6 Indictment Counts 59-60.) Suarez is also charged with conspiring to assault and assaulting, in aid of racketeering, other individuals. (S-6 Indictment Counts 56-57, 63.) Suarez is further charged with racketeering, with the alleged conspiracy to murder and murder of Esteban Alvarado-Bonilla as predicate acts. (S-6 Indictment Count 1). In addition, Suarez is charged with acting as an accessory after the fact, knowingly and intentionally assisting one or more offenders in order to hinder and prevent the offenders' apprehension, trial, and punishment. (S-6 Indictment Count 65). Finally, Suarez is charged with brandishing and discharging a firearm during crimes of violence. (S-6 Indictment Counts 61, 64.)

As an initial matter, these are plainly serious charges—the majority of which involve the use of violence—which support the Court's conclusion that the use of an anonymous jury is appropriate in this case. *See, e.g., Quinones*, 511 F.3d at 296 ("[T]he seriousness of the crime . . . reinforce[s] the district court's decision to empanel an anonymous jury."); *Wilson*, 493 F. Supp. 2d at 399 ("[T]he Defendant is charged with intentionally murdering two police officers in an attempt to obstruct justice. These charges are of the utmost seriousness, indeed as serious as any charge can be, and demonstrate both the extreme dangerousness of the defendant and a willingness to obstruct justice. Based on these charges alone, I would seriously consider empaneling an anonymous jury.").

Moreover, the defendant's alleged associates have evinced a clear willingness to interfere with the judicial process. There are numerous instances of Long Island MS-13 members attempting to interfere with the judicial process, including retaliating against individuals believed to have cooperated with law enforcement authorities. *See, e.g., United States v. Prado*, No. 10cr074, 2011 WL 3472509, at *7 (E.D.N.Y. Aug. 5, 2011) (detailing witness tampering, witness retaliation, and conspiracy to commit obstruction of justice murders by defendants themselves and also associates of defendants).

The Court finds that these allegations of witness tampering and witness retaliation demonstrate a clear willingness on the part of the enterprise as a whole to interfere with the judicial system and weigh strongly in favor of empaneling an anonymous and partially sequestered jury. *See, e.g., Vario*, 943 F.2d at 239-40 ("We are satisfied that two circumstances surrounding this case, the grand jury tampering charge and the expected publicity, justified the trial court's decision to empanel an anonymous jury. . . . An obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in our decisions regarding anonymous juries. Although Vario may not have personally spoken to the grand jury witness, his co-conspirator took the act in furtherance of the conspiracy. Since it is a fundamental tenet of the law of conspiracy that reasonably foreseeable acts of individual co-conspirators taken in furtherance of the conspiracy count against all members equally, Vario's argument is unavailing." (citations omitted)); *United States v. Tutino*, 883 F.2d 1125, 1132-33 (2d Cir. 1989) (empanelment of anonymous jury was justified where defendants had serious criminal records and a history of jury tampering, as evidenced by affidavits submitted by three jurors who had been approached in connection with a prior narcotics case and evidence that one of the defendants was personally involved in jury tampering); *Wilson*, 493 F. Supp. 2d at 400

6

("The [affidavit submitted by the government] attests to the Defendant's and his associates' history of interference with the judicial process. Specifically, while the Defendant was in state custody . . . [the Defendant] ordered another prisoner to attack a corrections officer and the other prisoner did so. Moreover, there are instances of [the Defendant's] criminal associates having attempted to coerce witnesses not to testify or cooperate with authorities . . . . This history of interference with the judicial process also warrants the use of an anonymous, semi-sequestered jury, as requested by the Government."). The fact that most of the prior attempts by MS-13 members to interfere with judicial proceedings did not involve jurors, but instead related to witnesses, does not change the Court's conclusion. *See Quinones*, 511 F.3d at 295-96 (murder of a confidential informant "threatened the judicial process both by eliminating a witness who could have provided incriminating evidence against defendants and by sending a powerfully frightening message to others of the terrible consequences awaiting anyone who cooperated in defendants' prosecution"); *Blackshear*, 313 F. App'x at 343 ("Although none of [defendant's] prior incidents involved jurors, he consistently attempted to obstruct justice—by bribing witnesses and by intimidating witnesses. . . . It does not seem unreasonable to infer that jurors might also be threatened.").

Furthermore, as to the defendant's means to interfere with the judicial process, defendant is alleged to be associated with MS-13, which the government contends is a large-scale criminal enterprise with members located not only throughout Long Island and Queens, but also throughout the United States and Central America. (*See* S-6 Indictment ¶ 1; Gov. Motion at 4.) As demonstrated by the witness tampering and retaliation offenses, to which several defendants associated with MS-13 have already pled guilty, the members of MS-13 plainly have the means and a willingness to interfere with the judicial system. Moreover, according to the government, many of MS-13's leaders and members remain at liberty on Long Island (*see* Gov. Motion at 3-4) and, thus, would have the ability to interfere with defendant's trial. Additionally, the government has presented strong reason to believe that the members of MS-13 are willing and able to engage in violent criminal behavior: In addition to the serious charges outlined *supra* against Suarez, other defendants in this case have been charged with one or more murders in aid of racketeering and other related offenses. (*See generally* S-6 Indictment.) Although a history of violent behavior is not required to empanel an anonymous jury, evidence of such a history is relevant to the Court's analysis. Taken together, the Court finds that these allegations—namely, that the defendant is associated with a large-scale criminal enterprise with a history of violence, a demonstrated willingness and ability to tamper with the judicial process, and numerous members still at liberty—weigh strongly in favor of jury anonymity. *See Thai*, 29 F.3d at 801 (upholding decision to empanel anonymous jury where government made motion "based in large part on evidence of defendants' acts of intimidation toward their crime victims, their attempts to kill certain of those victims, and the murder of [a victim] because of his refusal to retreat from his complaints to the police" and where the government "maintained that jurors whose identities were disclosed would be at risk because [the gang] had at least 100 members, many of whom were not in custody"); *Amuso*, 21 F.3d at 1264-65 (concluding that district court properly granted motion for anonymous and sequestered jury where defendant Amuso was charged with crimes

7

of "extreme violence" and "[t]he crimes charged also showed that Amuso was willing to interfere with the judicial process by murdering government witnesses and, as head of the Luchese crime family, it was certainly reasonable to expect that Amuso had the means to interfere with the jurors if he so desired"); *Persico*, 832 F.2d at 717 (upholding decision to empanel an anonymous jury where district court based its decision on "the violent acts alleged to have been committed in the normal course of Colombo Family business, the Family's willingness to corrupt and obstruct the criminal justice system, and the extensive publicity this case is expected to continue to attract" (quotation marks omitted)); *Wilson*, 493 F. Supp. 2d at 399-400 ("[I]n addition to the charges of murdering [two police officers], the indictment also alleges that the Defendant is part of a criminal enterprise known as the 'Stapleton Crew,' a violent organization that engages in acts of robbery, murder and narcotics trafficking. . . . In short, the Defendant's criminal history and his participation in a large scale criminal enterprise without question show that he is dangerous and weigh heavily in favor of using an anonymous, partially-sequestered jury in this trial."); *Locasio*, 357 F. Supp. 2d at 562 ("The organized crime status of the defendants, although not alone sufficient to support empaneling an anonymous jury, is plainly not irrelevant. The indictment charges that Richard Martino was a soldier in the Gambino crime family and that Locasio was a capo. Thus Martino, who himself has shown a willingness to corrupt the judicial process, also has strong and influential ties to an organization whose members have a documented history of seeking to tamper with juries and who could provide the support necessary to achieve that objective." (citations omitted)); *see also Young*, 385 F. App'x at 14 (although it was unclear what lengths organized crime family might go to in order to assist a low-level member, empaneling an anonymous jury was warranted where the government made a "sufficient showing" of the family's "willingness to subvert the judicial process" and evidence at trial also indicated the defendant was willing to "subvert the proceedings by inducing another to provide him with a false alibi").

Accordingly, the Court finds that the government has alleged "something more" here than a mere link to organized criminal activity or a gang, and instead has made a showing of "a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf [and] a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a juror to reasonably fear for his own safety." *Vario*, 943 F.2d at 241. Thus, the Court concludes that there is a "strong reason to believe the jury needs protection" in this case. *Stewart*, 590 F.3d at 124; *United States v. Thomas*, 757 F.2d 1359, 1364-65 (2d Cir. 1985) ("The circumstances of this case support the trial judge's decision to impanel an anonymous jury. The defendants were alleged to be very dangerous individuals engaged in large-scale organized crime who had participated in several 'mob-style' killings. Charges in the indictment accused defendants of attempts to interfere with the judicial process by murdering government witnesses. . . . [T]here was strong evidence of defendants' past attempts to interfere with the judicial process, and defendants were alleged to be part of a group that possessed the means to harm jurors.").[3]

---

[3] The Court notes that, although the media interest in this case has not been overwhelming, there nevertheless have been a number of press reports related to the charges in this indictment.

8

Having reached this conclusion, the Court must take "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *Stewart*, 590 F.3d at 124. In prior proceedings, similarly situated defendants have argued that no such precautions exist and that granting the government's motion for an anonymous and partially sequestered jury will violate defendants' Fifth Amendment right to due process and Sixth Amendment right to an impartial jury. *See, e.g., Prado*, 2011 WL 3472509, at *9. Specifically, in *Prado*, the defendants argued that, regardless of any explanation given to the jurors by the Court, the jurors inevitably will know that they are being protected from the defendants, and they consequently will be biased against the defendants from the start of trial. *Id.*

This Court found then, and maintains today, that this argument is unpersuasive. As an initial matter, it is well-established that "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." *Thai*, 29 F.3d at 800-01 (quoting *Vario*, 943 F.2d at 239). Thus, any potential argument that the use of an anonymous jury will automatically bias the jury pool by creating an environment steeped in fear or intimidation lacks merit. Indeed, the Second Circuit has repeatedly held that a defendant's presumption of innocence is properly maintained where the court gives a neutral and non-prejudicial explanation to the jury regarding the need for anonymity. *See, e.g., id.* at 801 ("In order to provide a nonprejudicial reason for maintaining anonymity, the introduction to the questionnaire stated, with the approval of the parties, that 'selecting an anonymous jury is not an unusual practice and has been followed in many cases in Federal Court. Anonymity will ward off curiosity that might infringe on a juror's privacy.' ... [T]he court's questionnaire properly protected defendants' interests both in the selection of unbiased jurors and in the proffer of a nonprejudicial reason for the preservation of juror anonymity. We find no abuse of discretion in the use of an anonymous jury in the present case." (alterations in original omitted)); *Paccione*, 949 F.2d at 1193 ("We see no inadequacy in the procedural precautions taken by the court to prevent prejudice to the defendants as a result of the anonymity of the jurors. ... The court ... adequately instructed the jury at the outset of the trial that the special precautions were designed to protect the jury from contacts by the media, thereby implying that the security measures were not the result of threats from the defendants.");

---

(*See* Gov. Motion at 22-23 & n.3 (citing articles).) Thus, although this factor does not weigh as heavily in the Court's analysis as the factors discussed above, the existence of such pre-trial publicity does provide further support for the Court's decision to empanel an anonymous and partially-sequestered jury. *See Quinones*, 511 F.3d at 296 ("[T]he likelihood of pre-trial publicity ... reinforce[s] the district court's decision to empanel an anonymous jury." (collecting cases)); *Vario*, 943 F.2d at 240 ("Vario also argues that the publicity surrounding this case was so minimal that it did not warrant an anonymous jury. We are unpersuaded. Pre-trial publicity may militate in favor of an anonymous jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public. At the time of the government's anonymous jury motion in the district court, *New York Newsday* had recently published a cover story about the case entitled *The Mob and Local 66*. ... Although no publicity followed this initial article, we cannot say that at the time that the anonymous jury motion was made, the government's prediction that publicity would continue was unreasonable or unjustified." (quotation marks and citation omitted)).

9

*Tutino*, 883 F.2d at 1133 (holding that "any risk that the empanellment [sic] of an anonymous jury might deprive defendants of the presumption of innocence was minimized by Judge Leval's instructions to prospective jurors" in which the district court stated, in pertinent part, "It is a common practice followed in many cases in the Federal court to keep the names and identities of the jurors in confidence. This is in no way unusual. It is a procedure being followed in this case."). Consequently, the Court does not find that this trial presents such unique circumstances that the instructions typically used for an anonymous jury will not suffice to guard against any undue prejudice or bias against the defendant here.

Moreover, the Court finds that the defendant's right to a fair and impartial jury will be sufficiently protected by a careful and searching *voir dire*, which will be designed to uncover bias and consequently will allow the defendant to meaningfully exercise his challenges. *See Aulicino*, 44 F.3d at 1116 (where otherwise warranted, "the use of an anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a careful *voir dire* designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities"); *Vario*, 943 F.2d at 241-42 ("[T]he district court conducted a searching *voir dire* which sufficiently enabled Vario to exercise his challenges meaningfully and to obtain a fair and impartial jury."); *Tutino*, 883 F.2d at 1133 ("Judge Leval conducted an extensive and thorough *voir dire*. Although the jurors' names, addresses, and places of employment were withheld, the jurors were questioned about their neighborhoods, marital status, employment, spouse's and children's employment, education, ethnic background, military service, and, optionally, religious background, among other things. This probing inquiry was more than sufficient to enable the defendants to exercise their challenges meaningfully, and to obtain a fair and impartial jury."); *cf. United States v. Barnes*, 604 F.2d 121, 140 (2d Cir. 1979) ("As long as a defendant's substantial rights are protected by a *voir dire* designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.").

Thus, the Court finds that it will be able to take adequate precautions—namely, by giving the jury a neutral explanation for the precautionary measures and by conducting a detailed *voir dire*—to protect defendant from any undue prejudice stemming from the use of an anonymous and partially sequestered jury. *See United States v. Gotti*, 459 F.3d 296, 345 (2d Cir. 2006) ("Gotti does not argue that reasonable precautions were not taken to minimize prejudicial effects. Nor can he, as the precautions set forth in *Paccione*—conducting a thorough voir dire and providing the jurors with a plausible and nonprejudicial reason for not disclosing their identities—were followed here. The district court made use of a juror questionnaire that was jointly submitted, and instructed the jury that the special precautions had been implemented to protect them from the inquiring media." (citation omitted)); *Quinones*, 511 F.3d at 296 ("Defendants do not contend that the district court failed to take adequate procedural precautions to ensure that they were not prejudiced by the selection of an anonymous jury, nor would the record support such an argument. The district court's *voir dire* was sufficiently detailed to compensate for jury anonymity, and the court couched its jury instruction regarding anonymity in such a way as to avoid intimating that defendants

posed any risk to persons or to the judicial process." (citations omitted)).

Finally, the Court finds that the same reasons that warrant the use of an anonymous jury also warrant partial sequestration of the jury in the manner proposed by the government. *Cf. Gotti*, 459 F.3d at 346 (concluding jury anonymity and partial sequestration proper where defendants were charged with membership in a powerful organized crime family, defendants included the head of the family and a captain in the family, indictment charged two defendants with witness tampering, and there was expected to be intense media coverage); *Locasio*, 357 F. Supp. 2d at 563 (granting motion for anonymous and partially sequestered jury in light of "the seriousness of the charges, the lengthy prison sentences that convictions would entail, the evidence of Martino's efforts to interfere with the judicial process, and the ability of the defendants to enlist the resources of the Gambino crime family, an organization with a documented history of juror intimidation"). To the extent that allowing the jurors to park in the employee lot and use the employee entrance might unduly prejudice the defendant, the Court finds that such prejudice can be avoided through the use of the same neutral instruction that will be given to the jury regarding anonymity. *See Amuso*, 21 F.3d at 1265 ("In effectuating its sequestration order, the court told the jury that sequestration was necessary to protect the jury from being tainted by pretrial publicity. By giving the jury a neutral explanation for why sequestration was necessary, the court decreased the probability that the jury would infer that Amuso was guilty or even dangerous, thereby preserving the presumption of innocence."). Moreover, for the same reasons, the Court concludes that, while the jurors are in the courthouse, they will be provided with a separate space to eat lunch in the cafeteria (if they choose to do so) and the Court Security Officers will escort them from the lobby to the jury room each day, and vice versa.

The Court notes that the Second Circuit and other district courts have authorized the use of sequestration measures that were similar to, or even more intrusive and extensive than, those being utilized here. *See, e.g., Blackshear*, 313 F. App'x at 342-43 (affirming district court decision to empanel anonymous jury and to order that the jurors eat lunch together and be accompanied in and out of the courthouse by U.S. Marshals to avoid mingling in the courthouse); *Wilson*, 493 F. Supp. 2d at 400 (ordering that jury be sequestered as they travel to and from the courthouse and during recesses); *Locasio*, 357 F. Supp. 2d at 564 (ordering that the jurors be picked up from and dropped off at "an undisclosed central location" and transported to and from the courthouse by United States Marshals each day, and that the jurors be "escorted by the United States Marshals to and from any locations at which they may recess for lunch, when they are not lunching in the jury room"). Thus, given the strong reasons to believe in this case that the jury needs protection, as discussed *supra*, the Court finds that allowing the jurors to park in the employee parking lot and to use the rear entrance of the courthouse (as well as the other above-referenced courthouse measures) are modest and appropriate measures that are necessary to ensure the protection of the jurors and the integrity of trial. As noted above, the Court also finds that the defendant's right to a trial by a fair and impartial jury can be adequately protected through the use of a neutral and non-prejudicial instruction to the jury.

Accordingly, the Court grants the government's motion for an anonymous and partially sequestered jury in its entirety.

## II. Conclusion

As set forth orally on the record in Court and for the reasons set forth herein, the government's motion for an anonymous and partially sequestered jury is granted.

SO ORDERED.

/s/ Joseph F. Bianco
_____
JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: December 28, 2020
Central Islip, New York

\* \* \*

The government is represented by John Joseph Durham, United States Attorney's Office, Eastern District of New York, 610 Federal Plaza, Central Islip, NY 11722. Defendant is represensted by John Frederick Carman, 666 Old Country Road, Garden City, NY 11530.